UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLATINUM SPORTS LTD., et al.,

        Plaintiffs,

vs.

Case No. 07-CV-12360

HON. GEORGE CARAM STEEH

THE CITY OF DETROIT,

        Defendant.
_____/

ORDER GRANTING IN PART AND DENYING IN PART
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DOC. 78]</u>

      Plaintiff Platinum Sports has operated an Adult Group D Cabaret known as "All Stars" in Detroit, Michigan for several years. Plaintiff Shahida Hardaway is an adult entertainer working at All Stars. Defendant, City of Detroit, has passed and enforced various ordinances regulating Adult Group D Cabarets ("Cabarets") and adult entertainers, which are at issue in this lawsuit.

      Plaintiffs previously sought an order preliminarily enjoining enforcement of the Adult Cabaret Ordinance ("ACO" or "Ordinance"), Sections 5-2-1 through 5-2-44, and the incorporated Sections 30-1-1 through 30-1-18 of the Detroit City Code. The ACO, in its current form, became effective in 2005. Sections 5-2-1 through 5-2-44 mandate that Class D Adult Cabarets be licensed by the City of Detroit, and that entertainers who perform in Class D Adult Cabarets obtain an adult entertainer identification card from the Detroit Police Department.

On March 12, 2008, the Court entered a preliminary injunction prohibiting enforcement of the following sections of the ACO: 5-2-5(b), 5-2-25, 5-2-26, 5-2-34, 5-2-35, 5-2-36, 5-2-38, and 5-2-44. Plaintiffs have now filed a motion for summary judgment, seeking a permanent injunction and declaratory relief with reference to the sections 5-2-4, 5-2-5(b), 5-2-23, 5-2-25, 5-2-26, 5-2-31, 5-2-33, 5-2-35, 5-2-36, 5-2-37, 5-2-38, and 5-2-44 of the ACO.

Defendant does not object to the Court's rulings contained in its Order Granting in Part and Denying in Part Plaintiffs' Amended Motion for Preliminary Injunction, Preliminary Injunction, and Order Clarifying March 12, 2008 Preliminary Injunction related to Sections 5-2-5(b), 5-2-25, 5-2-26, 5-2-35, 5-2-36, 5-2-38 and 5-2-44 of the ACO. In addition, defendant does not object to the Court enjoining section 5-2-33(b), which states that the initial fee for an adult entertainer identification card allows the applicant to perform at five clubs.

Based upon defendant's acquiescence, partial summary judgment is granted and the Court's preliminary injunction, as clarified, will now become a permanent injunction. In addition, defendant is permanently enjoined from enforcing section 5-2-33(b). The Court will now address the arguments related to sections 5-2-4, 5-2-23, 5-2-31, 5-2-33, and 5-2-37.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere

allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

I. Sections 5-2-31 and 5-2-37

Plaintiffs attack three sections of the ACO for violating the First Amendment because they impose strict liability. The Court has already enjoined section 5-2-5(b), which subjected an operator to criminal liability for violations of the ACO by any employee. The Court generally agreed that the operator is in the best position to prevent certain violations of the ACO, in particular ensuring that dancers have identification cards before permitting them to dance. However, where there is no effective means to identify counterfeit dancer identification cards, the Court was not willing to waive the requirement of criminal scienter, or *mens rea*. Defendant has conceded the ruling granting injunctive relief as it relates to section 5-2-5(b).

Section 5-2-31 makes it unlawful for an operator to utilize a person as an adult entertainer, or for a person to provide adult entertainer services, unless such person possesses a valid adult entertainer identification card.

    (a)    It shall be unlawful for any licensee of any Group "D" Adult Cabaret or any Group "E" Adult Cabaret, or his or her employee or agent who is in charge of the premises, to utilize any person as an adult entertainer unless such person possesses a valid adult entertainer identification card that has been issued by the Police Department.

    (b)    It shall be unlawful for any person to provide his or her services as an adult entertainer in a Group "D" Adult Cabaret or in a Group "E" Adult Cabaret unless such person possesses a valid adult

> entertainer identification card that is issued by the Police Department for the adult cabaret where he or she is entertaining.

Plaintiff argues that this section of the ACO imposes strict liability to criminalize dancing without a *valid* identification card, and for allowing such dancing.

Section 5-2-37 likewise imposes strict liability on a dancer for performing without a valid adult entertainment identification card. Section 5-2-37(c) makes it unlawful for an operator to allow a dancer to perform without having an identification card on the premises.

(a) While performing at a Group "D" Cabaret or a Group "E" Cabaret, an adult entertainer shall have a valid adult entertainer identification card on the premises and have the card available for inspection.

(b) An adult entertainer who violates this section may be arrested and taken to the appropriate precinct for processing.

(c) It is unlawful for an owner, manager, or operator to allow an adult entertainer who does not have his or her card on the premises to perform at a Group "D" Cabaret or a Group "E" Cabaret.

In the case of Smith v. California, 361 U.S. 147, 80 S.Ct. 215 (1959), the Supreme Court looked at an ordinance that imposed strict criminal liability on retail booksellers not to have obscene books in their shops. The Court found that the constitutional guarantees of freedom of speech and of the press stood in the way of imposing strict liability on the booksellers. "By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitations on the public's access to constitutionally protected matter." Id. at 153. The Court recognized that if the bookseller was subject to criminal liability,

5

he would sell only those books he has inspected, and this would result in restricting the material made available to the public for sale.

> The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly.

Id. at 153-54.

The City responds that the ACO punishes individuals for their own conduct - the operator for allowing dancers to perform without identification cards, and the dancers for performing without an identification card. A careful analysis of the ordinance language is required. Section 5-2-31(a) makes it unlawful for a licensee, or his employee or agent, to utilize a person as an adult entertainer unless they possess a valid adult entertainer identification card. The requirement that the identification card be valid in order to avoid strict criminal liability causes the same concern that the Court had with regard to section 5-2-5(b). There is no mechanism in place for the operator to verify the validity of the identification card. The City's rationale that the operator is in the best position to monitor identification cards is faulty. That is, the operator or an employee can be expected to check for an identification card, but is not able to verify that a particular card is valid. In addition, as the section has been drafted, if a dancer presents a forged identification card, that would not provide the operator or his employee a defense to criminal charges. The Court therefore finds that section 5-2-31(a) unconstitutionally imposes strict liability on the operator and his employees.

Section 5-2-31(b) does not suffer from the same problem as section 5-2-31(a). When a dancer is ticketed for providing her services as an adult entertainer without

possessing a valid identification card, she is being punished for her own conduct. See, e.g., Bright Lights, Inc. v. City of Newport, 830 F.Supp. 378 (E.D. Ky. 1993). The adult entertainer is in a unique position to know whether or not she possesses a valid card.

Section 5-2-37(a) requires a dancer to have a valid identification card on the premises, available for inspection. Again, the dancer can be expected to know if her identification card is on the premises, and is valid. This requirement does not impermissibly punish the performer for actions carried out by others. Section 5-2-37(a) is not unconstitutional.

Finally, Section 5-2-37(c) makes it unlawful for an operator to allow an adult entertainer to perform without her card on the premises. This section avoids the problem found by the Court in section 5-2-31(a) by just requiring the operator to make sure the performer has a card on the premises. There is no additional burden on the operator to ensure that the card is valid. If a performer presented a forged identification card, the operator would not be subject to criminal liability under section 5-2-37(c), because the only duty imposed on the operator is to make sure a card is on the premises.

Accordingly, the Court finds that only section 5-2-31(a) is unconstitutional and that defendant shall be enjoined from enforcing that section of the ACO.

II. Section 5-2-4(c)(1)

Section 5-2-4(c) provides:

(c) It shall be unlawful for any operator, his or her employee or agent, adult entertainer, or any person on the premises to engage in, or to permit, the following conduct upon the premises:

    (1)    The performance of an act or acts, or simulated act or acts, of bestiality, cunnilingus, fellatio, masturbation, sexual intercourse, sodomy, or any other act involving the touching or contacting of the genitals of one person by another; or

    (2)    The erotic caressing or fondling of the female breast, the male or female buttocks, or the male or female genitals or pubic region by another person.

Plaintiffs' motion asserts that section 5-2-4(c)(1) is unconstitutional as applied, arguing that lap dances are routinely ticketed as "simulated sexual intercourse" by the Detroit Police Department when the police officer observer does not believe that the actors actually engaged in that conduct. Plaintiffs cite to a recent Supreme Court case to support their argument. The Supreme Court interpreted the phrase "simulated sexual intercourse" in the context of a statute that criminalized the pandering or soliciting of child pornography. United States v. Williams, 128 S.Ct. 1830 (2008). According to the Supreme Court:

> "simulated" sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera.

Id. at 1840-41.

An as-applied challenge contends that an ordinance is unconstitutional as it has been applied to the particular plaintiffs' activity, even though the ordinance may be capable of valid application to others. Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 803, n.22 (1984). A successful as-applied challenge does not render the ordinance itself invalid, but only the particular application at issue. The Court

must therefore look at how the defendant actually applies section 5-2-4(c)(1) to assess plaintiffs' constitutional challenge.

Defendant explains that in the past, the City's police officers have colloquially referred to writing a "simulated sex ticket." Detroit Police Sergeant, Charles Turner, testified at his deposition about what conduct would cause officers with the vice enforcement unit to write tickets for simulated sexual intercourse. According to Sergeant Turner, such a ticket would be issued for lap dancing, when a dancer performs a dance for a customer, only when there is touching. "[T]he illegal part of it is when you're touching, when any parts of your body touch another person's body, such as genitals or breasts or anything of that nature." (Turner, dep. at 13). When asked if "touching" required contact between flesh, Turner responded, "No. It can be with the clothes or with the clothes off, one or the other." (Turner, dep. at 14).

Vice Squad Lieutenant Vicki Yost confirmed Turner's testimony, and added that since 2008, the Police Department now refers to tickets issued under section 5-2-4(c)(1) as "unlawful touching" or "unlawful contact" tickets. (Yost Affidavit ¶ 11).

Because it appears undisputed the City and its Police Department interpret section 5-2-4(c)(1) to prohibit activities involving touching, that section of the ACO has not been applied in an unconstitutional manner to these plaintiffs.

III. Section 5-2-23(a) and 5-2-33(a)

    A. Section 5-2-23(a)

Section 5-2-23(a) provides for a fee to be charged with regard to the issuance of a license required for the operation of an adult cabaret:

> A non-refundable fee shall be charged for the processing and issuance of a license under this article. In accordance with Chapter 30 of this Code, this fee shall be established by the Director of the Consumer Affairs Department based upon the cost of issuance and administration of the licensing regulations, and shall be approved by the City Council. The fee shall be posted on a schedule at the Consumer Affairs Department Business Center.

The Supreme Court announced a rule in Forsyth County v. Nationalist Movement, 505 U.S. 123, 132-33 (1992), that an ordinance which imposes a fee upon the exercise of a First Amendment right must contain narrowly drawn, reasonable and definite standards to guide the governmental agent setting a permit fee. Plaintiffs argue that section 5-2-23(a) violates the Forsyth County rule because it allows the Director of the Consumer Affairs Department to determine what costs that official decides come within the rubric of the "cost of issuance and administration of the licensing regulations."

In Forsyth County, the plaintiff challenged an ordinance regulating permit fees for marches, parades and rallies. The ordinance empowered the administrator to "adjust the amount to be paid in order to meet the expense incident to the administration of the ordinance and to the maintenance of public order in the matter licensed." Id. at 126-27. The administrator testified that he based the fee in each case on what he thought would be "reasonable." The Supreme Court held that this allowed the administrator unbridled discretion, and permitted him to encourage some views and discourage other views through an arbitrary application of fees. The Court concluded that the ordinance was unconstitutional on its face.

Plaintiff argues that section 5-2-23(a) allows the Director of the Consumer Affairs Department to determine what costs that official decides comes within the rubric of the "costs of issuance and administration of the licensing regulations." For example, the

Chief of Police could have included costs of the initial application process, the enforcement, monitoring and reporting of violations of the entire ACO, and the costs of prosecuting violations of the ACO. Plaintiff concludes that because there is nothing in the ordinance to prevent the administrator from exercising his discretion in a content-based manner, the ordinance should be ruled unconstitutional on its face.

This case is distinguishable from Forsyth County in that the Director of the Consumer Affairs Department is not given any discretion to vary the fee charged to applicants. Courts are concerned about permit schemes that "involve[] appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority. "[T]he danger of censorship and of abridgment of our precious First Amendment freedoms is too great" to be permitted. Id. at 131 (citations omitted). The only issue here is whether the ordinance prescribes adequate standards for the administrator to apply in setting the license fee.

Defendant cites to cases from the Supreme Court, the Sixth Circuit Court of Appeals, and other courts which have upheld similar licensing fee language used in section 5-2-23(a). See e.g., Cox v. New Hampshire, 312 U.S. 569, 577 (1941) (upheld license fee which "meets the expense incident to the administration of the act and to the maintenance of public order in the matter licensed"); Northeast Ohio Coalition for Homeless v. City of Cleveland, 105 F.3d 1107, 1109 (6th Cir. 1997) (license fees that are "reasonably related to the expenses incident to the administration of the ordinance" are permissible).

The Court finds that section 5-2-23(a) is not unconstitutional on its face as a prior restraint. The ACO does not give the Buildings and Safety Engineering Department's

Business License Center any discretion to differentiate among applicants for adult cabaret licenses, and so does not violate the Forsyth County rule.  In addition, tying license fees to the cost of issuance and administration of the licensing regulations is permissible.

Plaintiffs raised concerns with the nonrefundable nature of the license fee at oral argument, but the issue was not briefed by either party.  Because it was not properly brought before the Court, the Court will not address this issue at this time.

B.  Section 5-2-33(a)

Section 5-2-33(a) provides for a fee to be charged in connection with an adult entertainer identification card:

> A non-refundable fee shall be charged for the processing and issuance of an adult entertainer identification card under this article.  In accordance with Chapter 30 of this Code, this fee shall be established by the Chief of Police based upon the cost of issuance and administration of the licensing regulations.  The fee shall be posted on a schedule at the Police Department Public Vehicle Unit.

Again, plaintiffs challenge this section as being unconstitutional on its face under the Forsyth County rule.  For the same reasons given with regard to section 5-2-23(a), the Court does not find section 5-2-33(a) to be unconstitutional on its face as a prior restraint.

C.  $250 Adult Entertainer Identification Card Fee

Plaintiffs argues that the $250 fee for an adult entertainer identification card authorized by section 5-2-33(a) is excessive and constitutes an unlawful tax on protected expression.  The City may impose a fee that is incidental to an otherwise valid licensing scheme, but the fee must be a "nominal fee imposed as a regulatory measure

to defray the expenses of policing the activities in question." Murdock v. Pennsylvania, 319 U.S. 105, 113-14 (1943).  The fee must be reasonably related to the expenses incident to the administration of the ordinance.  Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 395 (6th Cir. 2001).

When the licensing scheme is imposed to combat "secondary effects", as it is in this case, the Court is to consider three questions:

> (1) whether the fee's maximum amount will deter the exercise of First Amendment rights, (2) whether the measures the cost of which the County seeks to transfer to licensees via its fee structures are narrowly tailored means of advancing the County's interest in curbing secondary effects, and (3) whether the County's cost estimates for those measures are reasonable.

729, Inc. v. Kenton County fiscal Court, 515 F.3d 485, 501-505 (6th Cir. 2008).

### 1. Deter Exercise of First Amendment Rights

According to Sergeant Esther Lightfoot, the City issued 3,170 adult entertainer cards in 2001.  Since that time, the numbers have risen from a low of 1,700 in 2002 to 1,931 adult entertainer cards in 2008.  The City speculates that the reason for the large drop in cards from 2001 to 2002 was because a number of adult cabarets may have closed.  These numbers would indicate that the fee is not a deterrent to the exercise of First Amendment rights.

### 2. Fees Narrowly Tailored to Advance City's Interests

The City must show that a substantial governmental interest would be achieved less effectively without the regulation.  Ward v. Rock Against Racism, 49 U.S. at 799-800. The City contends that its ability to control negative secondary effects would be achieved less effectively without the fee.  (Lightfoot Aff. and Yost Aff.).

### 3. Adult Entertainer Fee is Reasonable

The City hired an expert, Mauricio Kohn, to prepare a report, analyzing overhead and other indirect costs associated with the City's regulation of adult entertainers. Mr. Kohn estimates the City's direct and indirect costs associated with adult entertainers as follows:

|  | Per Card | Total |
|---|---|---|
| Application Process | 72.87 | 131,174 |
| Enforcement, Monitoring and Reporting | 187.78 | 338,001 |
| Prosecution Costs | 65.31 | 115,809 |
| Totals | $325.97 | $586,739 |

Plaintiffs object to the inclusion of all costs of issuance of an identification card, administration of the licensing process, police investigations and enforcement of the entire ACO, and police prosecution of violations of the entire ACO. Plaintiffs argue that including such costs in the fee is unreasonable because passing on such costs to dancers is not authorized by the language of the ordinance, which requires the fee to be "based on the cost of issuance and administration of the licensing regulations." Plaintiffs would limit the "licensing regulations" to costs relating to the initial application for an identification card.

The Court would not go as far as plaintiffs ask and limit the fee to the initial application costs. The phrase "licensing regulations" need not be read as narrowly as plaintiffs contend. On the other hand, the Court does not believe that all enforcement and prosecution costs are obviously to be included in the administration of the licensing regulations either. Curiously, the operating license fee in section 5-2-23(a) is also to be

based on "the cost of issuance and administration of the licensing regulations," but this fee is not challenged in the present lawsuit.

The documentary evidence must be viewed, and the expert testimony assessed by the Court in order to make a conclusive determination about the reasonableness of the adult entertainer identification card fee. Where it is the applicant's responsibility to pay for and obtain all of the documentation required to accompany the application, the cost of issuance of the identification card cannot be significant. However, because the licensing scheme at issue is imposed to combat significant secondary effects, there will understandably be greater expenses in the administration of this scheme. It remains possible that a fee of $250 will be found to be unreasonable. There is an issue of material fact, which prevents the Court from making a final determination as to the reasonableness of the fee on summary judgment.

IV. Overbreadth Challenge

The Court notes that in their motion plaintiffs argue the ACO is overbroad, and therefore unconstitutional on its face, because it reaches a number of situations the City may not legitimately regulate. For example, plaintiffs are concerned about sanctioning partially or fully-clothed performers. However, as the City aptly points out, the ACO applies only to sexually-oriented businesses and adult entertainers. Each of the cases cited by plaintiffs in support of their argument involved mainstream establishments, not likely to present the type of secondary effects the regulation was designed to deter. As for plaintiffs' challenge regarding the showing of certain movies and television shows which contain nudity, section 5-2-3(14) contains an exception for productions which have been shown on publicly broadcast television.

Plaintiffs do not reply to the City's response regarding overbreadth of the ACO, nor were these issues pursued at oral argument. In the absence of specific, persuasive argument by plaintiff, the Court finds the provisions of the ACO generally to be narrowly drawn to withstand plaintiffs' blanket overbreadth challenge.

## CONCLUSION

The Court's preliminary injunction, as clarified, will now become a permanent injunction. In addition, defendant is permanently enjoined from enforcing sections 5-2-33(b) and 5-2-31(a). Plaintiffs' motion for summary judgment is granted in part and denied in part for the reasons stated in this opinion and order.

Dated: April 9, 2009

> S/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 9, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---